## GREGG v. MOSS.

1. A judgment will not be reversed for the rejection of testimony, whether it was in strict principle admissible or not, where the rejection worked no harm to the party offering it.
2. Whether the evidence before a jury does or does not sustain the allegations in a case is a matter wholly within the province of the jury, and if they find in one way, this court cannot review their finding.
3. A. lent to B. & C. a certain sum of money, whether for themselves or for a firm of which all parties were members, was a matter not clear. The money was, however, in fact, put in the firm by B. & C. An agreement was subsequently made, by all the partners, reciting that some had advanced money beyond their shares, and agreeing that each should make a statement of what he *had* advanced, and that the accounts so rendered and agreed upon should remain capital stock, and *that* partner's stock in the partnership. On the trial evidence being given, on the one hand, tending to show that in a statement furnished by A. in professed pursuance of the agreement, he had *not* included this money lent to B. & C., and on the other that at the time of the agreement he had agreed that he *would* put it in, an instruction was held to be correct which told the jury, that if at the time of the agreement between the partners, A. had assented to treat this money as an advance and to fund it, B. & C. would not remain personally liable on the original loan, if it had in truth been made to them personally; and that the fact that A. did not include the amount in his *statement* of advances made was not material, provided, as already said, that at the time of the agreement he had in fact *agreed* to include it.

ERROR to the Circuit Court for the Northern District of Illinois; the case, as assumed by the court from a bill of ex-

ceptions covering thirty 8vo. pages, in long primer type, without any assignment of errors, having been thus:

Richard Gregg sued W. S. Moss, *in assumpsit,* on this instrument; Kellogg, the party signing it with Moss, having been wholly insolvent.

PEORIA, December 23d, 1856.

RICHARD GREGG, ESQUIRE.

DEAR SIR: Mr. Elder is here, and wants to take the funds with him to pay drafts due to-morrow. It is not right that he should be forced to pay this money for our accommodation. If you will send us two drafts at sixty days, $5000 each, we will return you the money before the expiration of the sixty days. It must be done, as we cannot get along any other way. Mr. E. wishes to leave in the cars.

Yours truly,

W. KELLOGG,
W. S. MOSS.

The defendant pleaded *non assumpsit,* &c.

On the trial no question was made but that the money asked for in the letter, or its equivalent, had been advanced by the plaintiff. But it seemed that there existed at that time in Peoria, where the transaction occurred, and where all the parties resided, a partnership formed, to build a railroad, styled Kellogg, Moss & Co., of which the plaintiff and defendant, and Kellogg and others were members, and that the money furnished by Gregg had been used for the benefit of this partnership, which had now spent its funds and failed in its enterprise. The defendant alleged that the money had been advanced by the plaintiff to the *partnership,* and on *its* credit, and not on the individual credit of Kellogg and Moss; and that if this were not so at the time, that the plaintiff afterwards (on the 1st of December, 1857) had agreed that this sum, with others advanced by him to the partnership, should become capital in the partnership business, and thus increase his share of the capital.

The plaintiff proved the signatures to the letter, and that the sum mentioned in it was received by Kellogg, partly in money and partly in drafts, which answered the purpose;

and, in the further progress of his case, offered to prove by a competent witness that only a few minutes after Kellogg had obtained the money, he told the witness that he had received the money from the plaintiff, and had "fixed Elder off," and that Elder had gone home. On objection by the defendant the court excluded the testimony, and the exclusion was the subject of the first bill of exceptions.

Testimony was given on both sides on the point above stated to have been the grounds on which the defendants chiefly put the case, to wit, that the $10,000 had been advanced, originally to the partnership, and on its credit; and if not, that by the agreement of 1st December, 1857, the plaintiff had agreed that it should become capital in it. It was not denied that all the partners of the firm of Kellogg & Co., had, on the 1st of December named, made an agreement reciting that some of the members had advanced money and funds beyond their shares in the partnership, and agreeing that " each and every member of the said firm should make a statement of . . . advancements made to said firm, together with 10 per cent. interest from the dates of them, which after the said 1st of December, 1857, should remain as the capital stock of the firm, and represent the capital stock of each individual member of the firm, and fix their interests therein respectively and *pro tanto*." But Gregg swore that he had never funded this debt; that he had made out the statement in accordance with the agreement of December 1st, 1857, and that this $10,000 was not included in that account. Other testimony, however, tended to prove that when the agreement of 1st December was made Gregg did *agree* to put in this $10,000, and that it was one condition on which other partners signed it.

The evidence being closed the court charged fully saying, among other things, to the jury:

"If the evidence satisfies you that the plaintiff, at the time the agreement of the 1st of December, 1857, was made, assented to treat this $10,000 as a part of his advances to the firm of Kellogg, Moss & Co., and to have the same funded, as contemplated in said agreement, such assent on his part is binding

upon him, and releases Kellogg & Moss from their promise to pay the said sum or see the same paid. It is a substitution of the liability of the new firm to ultimately reimburse this amount as a part of the capital put into the old firm by the plaintiff for the individual liability of Kellogg & Moss, to him. But it is for you to say, under the evidence, whether such assent or agreement to fund was, in fact, made or not. If made, the defence is made out.

"Nor is it material whether the plaintiff afterwards included this amount in his statement of advances to the old firm or not. It is enough that he agreed to do so. Granting that Kellogg & Moss were liable to make it good to him in December, 1857, still, if the plaintiff agreed that the sum for which they were so liable should be carried over to his capital stock with Kellogg, Moss & Co., then the agreement is binding on the plaintiff, because this sum had already clearly been put into the affairs of the firm, and either the plaintiff or Kellogg & Moss were entitled to have it charged up as part of the assets furnished and sunk in the past business of the firm."

Verdict and judgment having gone for the defendant the case was now brought here, where it was submitted on a printed brief of *Mr. O. Jackson, for the plaintiff in error; a like brief by Messrs. Harding and McCoy, for the defendant in error; a reply by Mr. Jackson, and an answer by Mr. Harding to the same.* The argument of the counsel of the plaintiff in error was directed to prove, —

1st. That there was error in the exclusion of the testimony to show what Kellogg had said a few minutes after obtaining the money; that this ruling was erroneous, because the plaintiff had a right to prove the admission of one of the joint promisors as to the receipt of the money, made at about the time of or immediately after the transaction took place; a position which the learned counsel sustained by an able argument; relying on *Lowle* v. *Boteler,*[*] *Bachman* v. *Killinger,*[†] *Cady* v. *Shepard,*[‡] and other cases in Massachusetts and elsewhere, though he admitted that the rule was different in New York, and perhaps in some other States.

---

[*] 4 Harris & McHenry, 346.          [†] 55 Pennsylvania State, 416.
[‡] 11 Pickering, 400.

2d. Because, as matter of fact, the testimony did not show with sufficient certainty either that the plaintiff had originally advanced the money to the partnership, or that he had subsequently, on the 1st of December, 1857, agreed to fund it.

3d. That the charge on this branch of the subject (and quoted *supra*) was erroneous.

Mr. Justice MILLER delivered the opinion of the court.

This cause has been submitted to us on printed arguments on each side, with replies and counter-replies, none of which contains any regular assignment of errors, as required by the twenty-first rule of this court. The record presents a bill of exceptions of thirty printed pages of testimony, which is certified to be all that was given on the trial, and the arguments address themselves to the entire merits on this evidence.

We have felt very much inclined to dismiss the writ of error or affirm the judgment without an attempt to look up the questions of law which might possibly be involved in the record, for the number of cases coming to this court in which the bill of exceptions embodies all the evidence offered, and counsel, tempted by this, argue before us the whole case as if the verdict concluded nothing, requires a decisive remedy.

As far as we are able to see there are but two questions of law raised by the record.

The first relates to the exclusion of a single item of evidence offered by the plaintiff, and the second to the charge of the court.

The plaintiff having proved the signatures to the letter of December 23d, 1856, and that the sum mentioned in it was received by Mr. Kellogg, offered in the further progress of his case to prove by a competent witness that only a few minutes after Kellogg had obtained the money he told the witness that he had received the money from the plaintiff, and had "fixed Elder off," and that Elder had gone home. The exclusion of this testimony is the occasion of the first bill of exception.

We have a learned argument on the vexed question of the admissibility of the declarations of one partner, or joint obligor, against the other. But we are of opinion that the ruling of the court presents no error which should reverse the judgment, because its rejection worked no harm to the plaintiff. The execution of the paper was not denied, nor was it controverted, except by the general form of the pleading, that Kellogg had received the money. It had already been proved by several other witnesses and was at no time made a point in the case. The whole controversy before the jury turned on the question whether the money so received was advanced by Gregg on the credit of Kellogg and Moss alone, and if so, whether he had afterwards agreed to convert it into capital. The admission of Kellogg that he had received the money from Gregg gave no light on either of these questions. The judgment should not be reversed for the rejection of this testimony, whether it was in strict legal principle admissible or not.

The brief of the plaintiff proceeds to argue that the evidence before the jury does not sustain either of the allegations of advancing the money to the partnership, or the agreement of the plaintiff to convert it into capital of the partnership. With this we can have nothing to do. It was the province of the jury to determine whether either of these allegations was proved, for either of them was a valid defence to this action, and they have found in favor of defendant.

It is argued, however, that the instructions of the court on this branch of the subject were erroneous—to the prejudice of the plaintiff.

We have examined carefully the points of the charge objected to as well as the other parts of it, and, without elaborating the matter, we are of opinion that it puts this, the turning-point of the case, to the jury on fair grounds, and we can see no objection to the legal propositions stated by the court and excepted to by counsel.

JUDGMENT AFFIRMED.