## SANGER et al. v. FLOW et al.

*(Circuit Court of Appeals, Eighth Circuit.   October Term, 1891.)*

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—VALIDITY—INVENTORY.
   Mansf. Dig. Ark. § 305, provides that before an assignee for the benefit of credit-ors shall be entitled to take possession of or in any wise control the assigned prop-erty he shall file a complete inventory of the property, and a bond in double its es-timated value.   *Held,* that a provision in the deed of assignment that the assignee shall not take possession until he files the required bond is surplusage, and will not be construed as authorizing him to take possession before he files an inventory, in violation of the terms of the statute.

2. SAME—UNPREFERRED CREDITORS—SCHEDULE.
   Where a deed of assignment prefers certain creditors, and provides that the bal-ance of the fund shall be paid to all the remaining creditors *pro rata,* its validity is not affected by the failure to give in the deed or in any schedule attached thereto the names of the unpreferred creditors, or the amounts due them.

3. SAME—TIME OF APPLICATION OF PROCEEDS.
   Nor is the validity of such assignment affected by failure to fix a limit of time for the assignee to apply the proceeds of the assigned property.

4. STATUTES—CONSTRUCTION—ADOPTION OF STATE LAWS BY CONGRESS.
   Since Act Cong. May 2, 1890, (26 U. S. St. c. 182, § 31,) adopts and puts in force in the Indian Territory the body of the statutes of the state of Arkansas, it will be presumed that the construction and interpretation placed on these statutes by the supreme court of the state prior thereto were adopted at the same time.

5. ASSIGNMENT FOR BENEFIT OF CREDITORS—VALIDITY—INVENTORY.
   The failure of an assignee for the benefit of creditors to file an inventory of the assigned property, as Mansf. Dig. Ark. § 305, requires him to do before he takes possession of or in any wise controls the assigned property, will not invalidate the deed of assignment as against an attachment levied after it was executed.   Follow-ing *Clayton* v. *Johnson,* 36 Ark. 406.

6. SAME.
   Where such attachment is levied before the assignee is able to make an inven-tory, and the property is sold by the marshal as being perishable, an inventory by the assignee, which adopts the description under which the property was sold by the marshal, is sufficient.

7. ATTACHMENT—CLAIMS BY THIRD PERSONS—WITNESSES—EXAMINATION.
   Where an attachment is levied on the ground that defendants have disposed of their property in fraud of creditors, and a third person intervenes, claiming the at-tached property under an assignment for the benefit of creditors, it is within the discretion of the court, on the trial of the intervention, to refuse to allow plaintiff to put leading questions to the assignors.

8. SAME—INTERVENTION—PETITION—SUFFICIENCY.
   The failure of the intervener to file the deed of assignment under which he claims is not ground for a demurrer to his petition, but only for a motion for a more specific statement.

9. SAME—EVIDENCE—PREFERENCES—RELEVANCY.
   On an issue as to the validity of this assignment, evidence that the assignors—a partnership—preferred and provided for the payment of an individual debt of one of them, is irrelevant where there is no allegation that the assignee knew of or participated in this arrangement.

10. SAME—INSTRUCTIONS—HARMLESS ERROR.
    Where the only objection to the assignment is that the assignee failed to conform to the requirements of the statute, an instruction that it is the duty of a failing debtor to assign all his property for the benefit of his creditors is harmless error.

11. SAME—TRIAL—RIGHT TO OPEN AND CLOSE.
    Where plaintiff in the attachment denies the validity of the assignment under which the intervener claims, the burden of showing its validity is thrown on the intervener, and he has the right to open and close.

Error to the United States Court in the Indian Territory.

Action by Sanger Bros. against Flow & Foster, in which L. P. Ander-son intervened.   There was judgment on verdicts for defendants and intervener, and plaintiffs bring error.   Affirmed.

Before CALDWELL, NELSON, and HALLETT, JJ.

*W. O. Davis,* for plaintiffs in error.

*W. B. Johnson, A. C. Cruce,* and *C. E. Mitchell,* for defendants in error.

CALDWELL, J. On the 24th of November, 1890, the plaintiffs in error brought suit in the court below against Flow & Foster upon account for $2,171.67. On the same day the plaintiffs filed an affidavit for an attachment against the defendants, upon the ground that they had disposed of their property with the intent to defraud their creditors. An order of attachment was issued on the 24th of November, and on the same day levied on a stock of general merchandise, store fixtures, safe and contents, books, accounts, and notes, which had been the property of the defendants. Upon the application of the plaintiffs the court made an order directing a sale of all the property attached as perishable property, and on the 5th of January, 1891, it was sold by the marshal. On the day the plaintiff sued out the attachment, but some hours before the order of attachment was issued or levied, the defendants executed a deed of assignment to the interpleader, Anderson, conveying to him, n trust for their creditors, the identical property afterwards seized by he marshal on the order of attachment against the defendants. The deed of assignment was duly acknowledged and delivered to the assignee, and filed for record before the order of attachment reached the hands of the marshal. The assignee appeared, and filed an interplea, claiming the attached property under the deed of assignment, and the defendants filed an affidavit denying the grounds of the attachment. The plaintiffs filed an answer to the interplea, denying the execution of the deed of assignment, and alleging that it was void on its face, fraudulent in fact, and executed after the issue and levy of the writ of attachment. The issues on the interplea and on the attachment were submitted to the same jury who found the issues on the interplea in favor of the interpleader, and the issue on the attachment in favor of the defendants. Judgment was rendered in favor of the interpleader for the proceeds of the sale of the attached property, and in favor of the defendants quashing the attachment. The specifications of errors filed below and relied upon in counsel's brief will be considered.

The act of congress approved May 2, 1890, (26 U. S. St. c. 182, § 31,) adopted and put in force in the Indian Territory the body of the statutes of the state of Arkansas, as contained in Mansfield's Digest of the laws of that state. Among the statutes thus put in force was chapter 8 of that Digest relating to assignments for the benefit of creditors. Section 305 of the Digest provides that before the assignee shall be entitled to take possession, sell, or in any way manage or control the assigned property he shall file in the office of the clerk exercising chancery jurisdiction a full and complete inventory of the property, and a bond in double its estimated value. The deed of assignment contains this clause: "The said L. P. Anderson not to take possession of said property until he shall have filed a good and sufficient bond, as in such cases

made and provided." The deed makes no reference to an inventory, and the contention is that the clause prohibiting the assignee from taking possession until he gives bond is tantamount to providing that he shall take possession before making and filing the requisite inventory. It is the settled construction of this act by the supreme court of Arkansas that a deed of assignment, which in terms or by necessary implication provides that the assignee shall take possession of the assigned property before he makes and files the required inventory and bond, is repugnant to the statute, and void. But it is not essential to the validity of a deed of assignment that it should require the assignee to make and file the inventory and bond. The law imposes that duty on the assignee. The clause in the deed requiring the assignee to give bond before taking possession of the property is, therefore, surplusage. A useless provision, relating to giving the bond, which is in harmony with the statute, cannot be construed as authorizing or directing the assignee to take possession before he makes an inventory, in violation of the statute.

The deed of assignment prefers certain named creditors, and provides that, after paying the expenses of the trust and the preferred creditors, the balance of the trust fund shall be paid "to all our remaining creditors *pro rata*, according to their indebtedness." The names and amounts due the unpreferred creditors are not given in the deed or in any schedule attached thereto. It is claimed that the failure to attach such a schedule avoids the deed. The law is otherwise. Burrill, Assignm. pp. 186, 205. Such a schedule, if filed, would not be conclusive as to who were creditors, or the amount of their debts. If any surplus remains to be distributed to such creditors, and there is any doubt as to who they are, or the amount of their debts, the assignee should refer the matter to the court of chancery administering the trust, and that court will, by some appropriate proceeding, determine these questions, and order the fund distributed accordingly. If the assignee fails to act, any creditor may compel him to do so. Nor does the failure to fix a limit of time for the assignee to apply the proceeds of the assigned property affect the validity of the deed of assignment. Burrill, Assignm. p. 323. If the assignee does not pay over the trust fund to the creditors as quickly as he should, the court under whose supervision he is administering the trust, or any court of chancery having jurisdiction, will compel him to do so on the application of any creditor.

Several assignments of error rest on the proposition that the failure of the assignee to make and file the required inventory and bond before the property was attached by the plaintiffs avoids the deed as against such attachment. In adopting the Arkansas statutes for the Indian country it will be presumed that they were adopted with the construction and interpretation placed upon them by the supreme court of that state prior to their adoption by congress. It has long been settled by the decisions of the supreme court of Arkansas construing the statute under consideration that the execution and delivery of the deed of assignment to the assignee passes the title to the assigned property; that the failure of the assignee to make and file the inventory and give the bond does not affect

the validity of the deed, or the assignee's title to the property thereunder, but that the assignee is not "entitled to take possession, sell, or in any way manage or control" the assigned property until he makes and files the inventory and gives the required bond, though he may have "access" to the property for the purpose of making his inventory. *Clayton* v. *Johnson*, 36 Ark. 406; *Thatcher* v. *Franklin*, 37 Ark. 64; *Rice* v. *Frayser*, 24 Fed. Rep. 460. If for any reason the assignee does not make the inventory and give the bond within a reasonable time, the debtor, or any one of his creditors, may apply to the proper court for the appointment of an assignee who will qualify and execute the trust. *Clayton* v. *Johnson, supra*, 422. In this case the attachment of the assigned property by the plaintiffs put it out of the power of the assignee to make any more exact and complete inventory than was made. It seems that he finally adopted as his own the inventory made by the marshal under the order of attachment. As to one item, it is said that the inventory is not sufficiently specific, viz.: "One iron safe, books, accounts, and notes, $1,500." But the property was seized by the marshal on the order of attachment before the assignee had had time to make an inventory, and it was afterwards sold by the marshal upon an order of the court, and assumed the shape of money in the hands of the marshal or in the registry of the court. The assignee could, therefore, do no better than accept the marshal's description of the property which he had seized and sold. As this condition of things was brought about by the attachment sued out by the plaintiffs, they will not be heard to complain of the necessary results of their own action. The inventory, being the best and only one that could be made under the circumstances, was sufficient. Now that the property has been converted into money in the manner stated, an inventory of that would be sufficient.

The case seems to have been tried below by the plaintiffs in error on the theory that the interpleader could not maintain his claim to the property unless he had made and filed the required inventory and bond before he filed his interplea, and that, if he had not done so, the plaintiff's attachment should be sustained. But neither of these propositions is sound law. The interpleader might make and file the required inventory and bond during the trial, and they would have the same legal effect as if they had been made and filed on the day the assignment was executed; and, if the assignment was otherwise valid, a total failure to make and file the inventory and bond would not invalidate the assignment, or sustain the plaintiff's attachment of the assigned property. In such case the property should be discharged from the attachment, and returned to the custody from whence it was taken, there to remain until the assignee qualified himself to receive it, or until a court of chancery, on the application of the debtor or some creditor, appointed an assignee to execute the trust.

It is assigned for error that the plaintiff "proposed to propound to the assignors leading questions," and the court refused to permit them to do so. This was a matter resting in the sound discretion of the trial court, and not reviewable in this court. In the trial of the issue between the

plaintiffs and interpleader the plaintiffs, no more than the interpleader, had a legal right to ask the assignors leading questions. A demurrer to the interplea was overruled, and that ruling is assigned for error. We see no objection to the sufficiency of the interplea. It was sufficient in substance. If a copy of the deed of assignment should have been attached to the plea, the failure to do so was not ground of demurrer, but only of a motion for a more specific statement. Such a motion was afterwards filed, but it did not ask that the interpleader be required to file a copy of the deed of assignment.

The plaintiffs offered to prove by the witness Betts that a note which the witness owned and held in his hand, for $360, and purporting to be signed "A. J. Foster" and "D. D. Flow," and payable to one Lewis, was given for an improvement sold by Lewis to Foster, and which improvement had since been occupied by Foster as his homestead; and that said note was originally signed by Foster alone, and that Flow's name was added after witness purchased the note from Lewis. This evidence was excluded upon the ground, as stated in the bill of exceptions, that the note was the best evidence as to who were its makers. The object of this evidence was to show that the assignors had preferred and provided for the payment out of the firm assets of an individual debt of one of the partners. The evidence was rightly excluded, but not for the reason assigned in the bill of exceptions. It was irrelevant, and did not tend to impeach the assignment, unless the assignee had knowledge of and participated in the arrangement. *Emerson* v. *Senter*, 118 U. S. 3, 6 Sup. Ct. Rep. 981. The court expresses no opinion on the question whether such knowledge on the part of the assignee at the time he accepted the trust would avoid the deed. That question is not in the case upon the pleadings. The answer to the interplea setting up this defense does not allege that the assignee was a party to the transaction, or had any knowledge of it whatever; nor was it proposed to offer such proof. For these reasons the evidence was irrelevant to the issue, and rightly excluded. *Emerson* v. *Senter, supra.*

The plaintiffs in error excepted to every paragraph of the charge to the jury. We perceive no substantial error in the charge for which the case should be reversed. In the course of the charge the court told the jury that "it has been decided by the highest judicial authorities, both in this country and in England, that a failing debtor has not only the privilege, but it is his duty, to make an assignment of all his property for the benefit of his creditors." The law imposes no such duty on a failing debtor, and the statement that it does was erroneous; but, as it was an abstract proposition, which could not affect or influence the verdict, it is not an error for which the case should be reversed.

It is assigned for error that the interpleader was permitted to open and close the argument to the jury. The plaintiffs denied the execution and validity of the assignment. This imposed the burden on the interpleader of proving the execution of the deed and his title to the assigned property, and entitled him to the opening and close on that issue. The interpleader was not concerned with the issues on the attachment.

That was an issue between the plaintiffs and the defendants, triable before the court. *Holliday* v. *Cohen*, 34 Ark. 707, 716. It was, however, submitted to the jury trying the issue between the interpleader and the plaintiffs, because it was known its fate must be determined by the result of that issue. There was no ground for the attachment other than the making of the deed of assignment. If the assignment was valid, the attachment was confessedly wrongfully sued out, and *vice versa*. The real issue was on the interplea, and the interpleader's rights could not be prejudiced by the plaintiffs and defendants agreeing to submit to the same jury the issue between them on the attachment.

There was an error in the mode of impaneling the jury in the case. *Railway Co.* v. *James*, 48 Fed. Rep. 148, (decided at the present term.) But we are all of opinion that upon the state of the pleadings and the proofs in this case there was nothing for the court to submit to the jury, and that the court should have directed a verdict for the interpleader. *Chandler* v. *Von Roeder*, 24 How. 224; *Commissioners* v. *Clark*, 94 U. S. 278. There was no evidence tending in the slightest degree to impeach the assignment. An appellate court should not reverse a judgment for an error when it plainly appears from the record that the error worked the complaining party no harm. *Deery* v. *Cray*, 5 Wall. 795, 807; *Smith* v. *Shoemaker*, 17 Wall. 630; *Gregg* v. *Moss*, 14 Wall. 564; *West* v. *Camden*, 135 U. S. 507, 521, 10 Sup. Ct. Rep. 838. As the verdict rendered was the only verdict that could have been rendered in the case, no matter how the jury was impaneled or constituted, the plaintiffs were not harmed by the error. Judgment affirmed.