GLASIER v. NICHOLS.

'Circuit Court, W. D. Missouri, W. D. January 27, 1902.)

No. 2,560.

**1. CONFIDENTIAL RELATIONS—EVIDENCE.**

The issue being whether there was an agreement or understanding between the parties whereby defendant was acting for and in the interest of plaintiff as his trusted friend and agent, so that he could not obtain a benefit for himself in the way of commissions from the vendor in a purchase for plaintiff, evidence that defendant, under his contract of employment by a third person, was permitted to carry on a brokerage business for himself, is incompetent and irrelevant.

**2. SEPARATE CAUSES OF ACTION.**

Where there was an agreement whereby defendant was to act for and in the interest of plaintiff, as his trusted friend and agent, and defendant had a conveyance made to plaintiff for a greater amount than paid by defendant, which latter amount was greater than the value of the property, separate causes of action are stated by a count to recover the difference between what defendant paid and what he charged plaintiff for the property, and a count for deceit in inducing plaintiff to purchase, to recover the difference between what defendant actually paid over to the vendor and the value of the property.

**3. OPINION EVIDENCE.**

An opinion of a witness as to value of a mine is properly rejected; he having never seen the inside of it, but merely some surface dirt, and stated that, from his experience, he would be unwilling to buy any mine without going into it and examining it, and his opinion not being based on facts testified to by others.

Motion for New Trial and Arrest of Judgment.

Lathrop, Morrow, Fox & Moore, for plaintiff.

Thomas & Hackney, for defendant.

PHILIPS, District Judge. The only objection raised at the argument on the motion for new trial affecting the verdict on the first count of the petition, deemed worthy of consideration, is the action of the court respecting the effort made by the defendant at the trial to show that he was permitted, under the terms of his employment as manager of the Continental Zinc Company, to engage independently in conducting a brokerage business,—of buying and selling mining properties and prospects at Joplin. Waiving any discussion of the question, mooted at the trial, whether such authorization by the zinc company, a chartered corporation, could be evidenced by proof in pais, without any affirmative action by the board of directors, let us consider whether the fact sought to be established was competent and relevant. The sole issue on trial on the first count was whether there existed the agreement or understanding between the plaintiff and defendant alleged in the petition, and testified to by plaintiff, as having been entered into on or about the 1st of May, 1900, and whether the plaintiff was induced to believe, by the conduct and words of the defendant, that the defendant was acting for and in the interest of the plaintiff, as his trusted friend and agent. If so, it was dishonest for him to speculate upon this confidential relation, and secure a benefit to himself at the expense of the plaintiff. What difference could it possibly make

whether or not, with the consent of the Continental Zinc Company, he was pursuing the general avocation of a broker? It could in no wise relieve him of the obligation and liability which the law imposed upon his fiduciary relation to the plaintiff. The privilege to pursue such office of a general broker by no possible implication or intendment could affect the alleged obligation between him and the plaintiff, which depended entirely upon the existence of a specific contract of fiduciary relationship. His right to engage in buying and selling generally was perfectly consistent with his legal undertaking to deal in a special manner with the plaintiff, and could not in the remotest degree disprove the existence of a special understanding, or mitigate the deceit and fraud which the jury have found he practiced and perpetrated upon the plaintiff. This was the opinion entertained by the court at the trial, as indicated by his observation during the discussion of the admissibility of this evidence that he did not perceive its importance. Reference to the charge of the court will show that throughout the plaintiff's right of recovery was made to depend upon the existence of the agreement or understanding, in its essential parts, and the taking advantage by defendant of the known confidential relationship between him and the plaintiff to make a profit for himself to the injury of his confiding friend. And the court is bound to assume from the verdict that the jury found these specific issues for the plaintiff. The error, therefore, complained of, is a mere harmless abstraction, and as such constitutes no basis for a new trial. Gregg v. Moss, 14 Wall. 569, 20 L. Ed. 740; Cannon v. Pratt, 99 U. S. 623, 25 L. Ed. 446; Mining Co. v. Taylor, 100 U. S. 42, 25 L. Ed. 541; Lancaster v. Collins, 115 U. S. 227, 6 Sup. Ct. 33, 29 L. Ed. 373. Superadded to all this is the fact that the plaintiff's counsel, on cross-examination of the defendant, Nichols, permitted the witness to testify, and the witness did testify, fully, that it was a part of his contract of employment as general manager of the Continental Zinc Mining Company that he was permitted to pursue the avocation of a mining broker at Joplin; and, as this evidence brought out by the plaintiff was not contradicted by the introduction on the part of plaintiff of any countervailing evidence, the defendant had the benefit of the fact for whatever it was worth. Other objections made to the rulings of the court on the admissibility of evidence have no reference to the issues under the first count of the petition, so the verdict on that count must stand.

The next contention of counsel for defendant is that the verdict on the first count is a bar to the action on the second count. There is, in my opinion, no legal incompatibility between these two counts. The clear meaning and purport of the cause of action predicated in the first count is that the defendant, in violation of his assumed character as the trusted friend and agent of the plaintiff, took advantage thereof to put upon the plaintiff properties in question at a given price, under the belief of the plaintiff, induced by the deceit of the defendant, that the price was what in fact the defendant was paying to the owners therefor, when in fact he had paid less, and received and appropriated to himself, under the guise of com-

missions from the owners, over $13,000. As a party acting in such fiduciary relation must give to his principal the advantage of such contract, he is unquestionably liable, in an action on the case, for the sums thus appropriated. It is wholly immaterial what the pleader may denominate his action, or whether he has brought it for damages, or for the recovery of the specific sum misappropriated, and the like. The nature of the action and the relief sought are to be determined by the facts pleaded, as these, under the Code of Missouri, constitute the cause of action, and he is entitled to such judgment as the law attaches to the facts stated and proved. Wittenauer v. Watson, 11 Mo. App. 588; Henderson v. Dickey, 50 Mo. 161; Bank v. Evans, 51 Mo. 335; Wright v. Barr, 53 Mo. 340; White v. Rush, 58 Mo. 105; Ames v. Gilmore, 59 Mo. 537. If sufficient facts are stated to entitle the plaintiff to relief, the conclusions of law which the pleader draws from them, and particularly the relief he may ask, may, if necessary, be disregarded, and the court may grant any relief consistent with the case made by the evidence and embraced within the issues. Newham v. Kenton, 79 Mo. 382; Sharkey v. McDermott, 91 Mo. 647, 4 S. W. 107, 60 Am. Rep. 270; Baker v. Railway Co., 34 Mo. App. 98. The judgment is the conclusion of the law upon the facts found. The substantive effect of the cause of action stated in the second count of the petition is to recover from the defendant damages for his alleged deceit and fraud in taking advantage of the known confidence and trust reposed in him by the plaintiff to induce the plaintiff, in reliance upon the defendant's honesty, assurances, and representations, to buy certain mining properties at a much larger valuation than they were actually worth; the inducement to the defendant for the deceit practiced on the plaintiff being the commissions he was to receive from the owners for putting the property upon the plaintiff. As was stated in the charge of the court to the jury, the measure of damages for such wrong is the difference between the actual value of the property at the time of sale and the price paid therefor; meaning, of course, under the circumstances of the charge, the actual price paid by the defendant to the owners. It therefore is quite apparent that the two grounds of recovery are distinct, with different methods of measuring and ascertaining the damages. A recovery on the first count might have failed. The evidence might have failed to show that the defendant, in fact, received any such commissions; and yet, if the plaintiff proved enough of the other material allegations of the second count to satisfy the jury that the defendant was guilty of the fraud and deceit alleged, whereby he induced the plaintiff to buy at an exaggerated price, from an interested, dishonest motive, on the defendant's part, a recovery thereon would be authorized. And, vice versa, a recovery on the second count might have failed, because the evidence failed to satisfy the jury that there was any actual difference between the price paid and the value of the property, and yet a recovery could have been had upon the first count for the commissions wrongfully appropriated by the defendant. And if further demonstration were needed of the independent character

of the two causes of action, it is furnished in the fact that the petition in the second count counts on damages of $30,000 on account of the alleged fraud in the sale of the Captain mine. No claim is made in the first count for any commission on account of this transaction.

The contention of counsel that the jury, in assessing the damages on the second count, possibly included the sum of the verdict on the first count, I am certain, is not well founded. The amount of damages prayed for in the second count is $56,000, while the jury awarded only $5,000. On the first count the jury awarded damages exactly covering the amount of commissions wrongfully appropriated by the defendant, with interest thereon; thus showing not only that the jury intelligently comprehended the two issues, but that, after they had decided that the defendant should make restitution of his ill-gotten gains, they proceeded to ascertain what additional assessment should be made under the second count. There is absolutely no ground for assuming that there is a possibility that in assessing the damages on the second count the jury included the assessments of commissions awarded on the first count. On the contrary, in view of the evidence, well warranting a much larger assessment on the second count, the meager sum awarded persuades the mind of the court, beyond a reasonable doubt, that the jury, after deciding to make the defendant disgorge the amount of commissions concluded that $5,000 additional on the second count was equitable. Any other conclusion is utterly unreasonable and mere bald conjecture. The meager amount awarded on the second count amounts to a demonstration that the jury gave the defendant full credit for the commissions awarded on the first count, being the difference between what the defendant actually paid for the property and what he obtained from the plaintiff.

Neither is it conceivable that the jury did not correctly understand the purport of the court's charge respecting the rule for measuring the damages. It told the jury that the measure of damages on the second count is the difference between the actual value of the property at the time of sale and the price paid therefor, the clear intendment of which is the difference between the price for which it was sold to the defendant and its real value at the time. Some consideration must be had by the court, in passing upon such instruction, for the common sense and ordinary discrimination of the jury. This was an exceptionally intelligent jury; and the court entertains no reasonable doubt that they correctly understood this direction, and applied the proper rule, having due regard to the fact that they had awarded under the first count to the plaintiff the margin between what the defendant paid the owners and what he obtained from the plaintiff. The defendant took no exception to this part of the charge; neither did his counsel make request for a more specific direction on this point. The objection is clearly an afterthought, in searching for some possible escape after defeat.

The only remaining objection urged by defendant's counsel on the motion for new trial is the ruling of the court on the questions

asked of the witness Glover as to his opinion of the market value of the Condor and Nalahka properties. While it is true that the competency of a witness to express an opinion on the question of value of property is not so rigid as in other instances of expert testimony, yet, where the value of property is the essential matter in issue, the opinion of a witness, to constitute a basis for the verdict of a jury, ought to be based upon personal knowledge and observation of the property. It cannot be based upon mere hearsay, and ought not to be upon such a superficial observation of the property as to make his opinion mere guesswork. This witness stated that these properties were new properties, and necessarily but imperfectly developed. He also testified that the Nalahka property was richer than the Condor, as it was turning out pay dirt, and the Condor property was what was called "mill dirt" (that is, the ore was to be worked out by mill), and, as no mill had been employed, he could not, of course, tell anything about its quality or output. In this connection it is to be observed that the question propounded by defendant's counsel to this witness called for his opinion as to the value of both properties, and not based solely upon the Nalahka property. The witness distinctly stated that he had never been in either of these mines, and had never seen anything of them, except some surface dirt. Ought a jury to be permitted to form a verdict on the market value of a mine predicated of the opinion of a witness who had never seen the inside of it, and when the witness, who had been in the mining business, told the court and jury that, from his experience, he would be unwilling to buy any mine without going down into it and examining it? Other witnesses testified to the value of these mines; and particularly Mr. Mower, who claimed to be an expert, testified that he had made a critical examination of both of these mines, and stated the quality and appearance of the ore, and gave his opinion thereon as to the value. It did not appear that the witness Glover had ever sold any mineral from these mines; nor did he know whether or not the digging done in either of them left in sight an ounce of ore, or any indication of remaining ore. This witness, doubtless, if a practical miner, as defendant's counsel contends he was, would have been competent to express an opinion as to the value of that mine, based upon the testimony of Mr. Mower and others, who stated its condition, output, and appearance at the time. But no such question was put to him, or opinion called for thereon. But it was limited solely to a superficial view of some surface dirt from the "new properties, so far as the ore was concerned." The admission of expert opinions is always largely a matter resting in the sound discretion of the trial court, and not reviewable except when this discretion is manifestly abused. Iron Co. v. Blake, 144 U. S. 484, 12 Sup. Ct. 731, 36 L. Ed. 510; Railroad Co. v. Warren, 137 U. S. 353, 11 Sup. Ct. 96, 34 L. Ed. 681; Coal Co. v. Bevil, 10 C. C. A. 41, 61 Fed. 757. It is not conceivable, in view of all the direct evidence bearing upon the values of all these properties, that had this witness, with the limited qualification his examination disclosed, been permitted to express an opinion as to the value

of the two, how it could have possibly influenced the verdict one way or the other. In such case the court ought not to disturb the verdict, and put the parties to the trouble and expense of a retrial of the whole issues under the second count. This defendant, in my opinion, had an absolutely fair hearing, and lost his case because the morale of his conduct in these transactions was bad.

The motions for new trial and in arrest of judgment are overruled.