ARDMORE COAL CO. v. BEVIL et al.

(Circuit Court of Appeals, Eighth Circuit. May 21, 1894.)

No. 349.

1. INDIAN TERRITORY—ARKANSAS STATUTES IN FORCE—ACTION FOR DEATH BY WRONGFUL ACT.

Under Act May 2, 1890, § 31, which extends over the Indian Territory, certain laws of Arkansas, as published in Mansfield's Digest, "which are not locally inapplicable or in conflict with this act or with any law of congress, relating to the subjects specially mentioned in this section," enumerating chapters of said digest by title and number, among them "Pleadings and Practice, chapter 119," section 5225 of that chapter, allowing recovery of damages for death by negligence, cannot be excluded on the ground that it does not relate to pleadings and practice, as the intent was to adopt the provisions of the enumerated chapters as a whole, unless they were locally inapplicable, or in conflict with the act or some other existing act of congress.

2. OPINION EVIDENCE — CONDUCT OF EMPLOYE IN PARTICULAR LINE OF DUTY.

Testimony that the conduct of an employe in a particular line of duty, in which he had been engaged but one day, was very imprudent. given by a witness who had very little opportunity to observe his conduct in that capacity, without detailing the facts on which such opinion was predicated, is incompetent to show that he was unfit to be so employed because of his carelessness.

In Error to the United States Court in the Indian Territory.

This was an action by Etta Bevil and others against the Ardmore Coal Company for damages for the death of Henry Bevil. At the trial the jury found a verdict for plaintiffs. Judgment was entered thereon. Defendant brought error.

W. A. Ledbetter, for plaintiff in error.

W. B. Johnson, A. C. Cruce, and Lee Cruce, for defendants in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

THAYER, District Judge. This was a suit which was brought by Etta Bevil and her three minor children against the Ardmore Coal Company on account of the death of her husband, Henry Bevil, who was killed while working for the defendant company at its coal mines in the Indian Territory. The complaint averred, in substance, that as the deceased was engaged in loading one of the defendant's coal cars with lumber, at the mouth of a shaft or tunnel which led into one of the company's coal mines, he was run over and killed by another car belonging to the defendant, which had been carelessly unloosed from its fastenings and suffered to run down a tramway which led to the mouth of the shaft where the deceased was working. The defendant company had in its employ a man by the name of James Peers, who at the time of the accident was, and for one day previously had been, engaged as a car rustler. His duties appear to have consisted in hooking and unhooking a cable by means of which cars were drawn out of the mine or lowered into it. The shaft descended into the mine to a considerable depth, and at an angle of from 30 to 40 degrees. It was provided with a double-track railway or tramway, one of which tracks was used for drawing cars out of the mine and the other for lowering them into the mine. As we gather from the testimony, it was the duty of the car rustler to stand on an elevator platform, at or near the mouth of the shaft, and to detach the cable from loaded coal cars as they were drawn upon the elevator platform to be dumped, and to attach the cable to empty cars as they were lowered into the mine. Bevil and Peers were evidently fellow servants, but the complaint charged as a ground for recovery that Peers was a careless and reckless man, that he was indifferent to the safety of his fellow employes, that the defendant company knew or might have known that he was an unfit man to act as a car rustler by reason of his habits of negligence, and that the death of the deceased was in fact occasioned by the careless conduct of said Peers at the time of the accident. ·

Confining ourselves to the points discussed in the briefs of counsel, it is necessary to refer briefly, and in the first instance, to the contention of counsel "that in the Indian Territory no cause of action survives in favor of anybody for injuries which result in death." This proposition is based on a highly technical construction of the act of congress of May 2, 1890 (Supp. Rev. St. vol. 1, pp. 733, 734), which extended certain general laws of the state of Arkansas over the Indian Territory. Section 31 of that act declares:

"That certain general laws of the state of Arkansas in force at the close of the session of the general assembly of that state of 1883, as published in 1884, in the volume known as Mansfield's Digest of the Statutes of Arkansas, which are not locally inapplicable or in conflict with this act or with any law of congress, relating to the subjects specially mentioned in this section, are hereby extended over and put in force in the Indian Territory until congress shall otherwise provide, that is to say: The provisions of the said General Statutes of Arkansas relating to administration, chapter one," etc.

. Then follows a particular enumeration of numerous other chapters of Mansfield's Digest, embodying general laws, which are referred to and described by the number of the chapters and the title thereof

as they are numbered and entitled in Mansfield's Digest published in 1884. Because section 31 above quoted contains the phrase, "relating to the subjects specially mentioned in this section," it is argued that when a chapter of Mansfield's Digest is subsequently referred to by its number and title in the following manner, "Pleadings and Practice, chapter one hundred and nineteen," no provision found in such chapter is extended over the territory unless, upon a critical view of the provision, it is found to be properly classified as a law relating to pleading and practice. In other words it is insisted that congress did not intend to approve the classification which the learned author of the Digest had seen fit to make, or to adopt the several enumerated chapters of the Digest as a whole, but that it merely intended to extend over the territory such provisions of law found therein as properly related to the subjects designated by the titles of the several enumerated chapters. It so happens that Lord Campbell's act, as re-enacted in the state of Arkansas, is section 5225 of chapter 119 of Mansfield's Digest, which chapter is entitled, "Pleadings and Practice," and it is contended that this section was erroneously classified under that title, as it does not relate to pleading and practice, and for that reason that the provisions contained in section 5225 were not extended over the Indian Territory by the act of congress aforesaid. We think that the process of reasoning by which the foregoing result is attained is altogether too technical and refined to deserve much consideration. We have had some difficulty in stating the contention in an intelligible form, as well as the substance of the argument by which counsel seek to enforce it; and this is perhaps a sufficient reason for rejecting the construction for which counsel contend. In construing a statute like the act of May 2, 1890, it is generally safe to reject an interpretation that does not naturally suggest itself to the mind of the casual reader, but is rather the result of a laborious effort to extract from the statute a meaning which it does not at first seem to convey. It is apparent, we think, that congress intended to extend over the Indian Territory all of the provisions that are found in the several chapters of Mansfield's Digest, which are enumerated in section 31 of the act of May 2, 1890, unless they were locally inapplicable, or were in conflict with the act of May 2, 1890, or with some other existing act of congress. The phrase, "relating to the subjects specially mentioned in this section," is tantamount to the expression, "hereafter more particularly mentioned and described in this section." Congress intended to put in force in the Indian Territory all of the general laws contained in the several chapters of Mansfield's Digest which are designated in section 31 of the act of May 2, 1890, by number and title. It certainly did not intend to make the existence or nonexistence of a law to depend upon the question whether it was published under a title which correctly indicated the character of the law. It follows, therefore, that no error was committed by the trial court in overruling the motion to exclude all testimony on the ground that the complaint did not state a cause of action.

It is next assigned for error that the trial court erred in permitting the following question to be propounded to one D. H. Collier, who was the father of, and the principal witness for, the plaintiff Etta Bevil: "Did or not James Peers, in operating the cars as car rustler, act in a prudent or imprudent manner while he was operating the cars as car rustler for the Ardmore Coal Company?" The witness answered the question as follows: "He did not rustle them correctly, and was very imprudent." It is manifest, we think, after a careful perusal of the entire record, that there was no evidence before the jury tending to show that Peers was a careless or reckless man except the testimony of Collier in the answer above quoted; and it is also manifest that, in the absence of such testimony, there was no evidence to support the verdict for $12,000 which the jury eventually rendered against the defendant company. It must be conceded that the judgment rests wholly upon the opinion expressed by Collier in reply to the question above mentioned. It may also be said that it appears from the uncontradicted evidence in the case that Peers had only served as a car rustler for one day previous to the accident, and that Bevil was injured early in the morning of the second day on which Peers served in that capacity. Moreover, we do not find any explicit testimony in the record showing for what length of time, if any, Collier had observed Peers' conduct as a car rustler, or that he had in fact had any opportunity to observe his conduct in that line of duty, except as it may be inferred that he had had some opportunity from the fact that he assumed to express the aforesaid opinion. It does appear, however, that Collier, Bevil, and Peers had worked together in the shaft of the mine, in the discharge of various duties, for about 15 days prior to the accident, and it is most probable, we think, that whatever opinion Collier had formed with reference to Peers' competency as a car rustler had been formed while Peers was employed in another and entirely different line of duty. It should be further observed that the evidence fails to show that the occupation of a car rustler was one requiring either a high degree of skill or experience. On the contrary, it is evident, that the duties pertaining to that occupation were exceedingly simple, and that any common laborer possessing ordinary sense would be able to discharge them in an efficient manner. Under these circumstances, we are persuaded that the trial court erred in overruling the defendant's objection to the above-mentioned question, and that such error is of sufficient importance to entitle the defendant company to a new trial.

We do not question the general rule that witnesses may give their opinion concerning the general character of a person for prudence or carelessness, when an issue of that kind is raised by the pleadings. To avoid the trial of numerous collateral issues concerning the conduct of a person on particular occasions, it is competent for a witness to give the result of his observation of a person's general conduct, with respect to his being negligent or otherwise, provided always that the witness has had a fair opportunity to observe

his conduct. Frazier v. Railroad Co., 38 Pa. St. 104, 110; Gahagan v. Railroad Co., 1 Allen, 187, 190; Railroad Co. v. Rambo, 8 C. C. A. 6, 59 Fed. 75. The rule in question, permitting witnesses to give their opinion on such questions, rests largely upon grounds of convenience and necessity. But in the present case the question propounded was not framed with a view of eliciting an opinion from the witness as to whether Peers was generally, by disposition and habit, a careless person, and for that reason unfit to be trusted in the discharge of duties which required the exercise of care and discretion. The question had reference to his conduct in a particular line of duty, which he had only followed for one day prior to the accident. The witness was asked whether Peers acted in a prudent or imprudent manner as a car rustler, not whether he was generally a prudent or imprudent person. This question was also asked under circumstances which rendered it evident that the witness, at best, had only had a very meager opportunity to observe his conduct as a car rustler, and that he was probably a prejudiced witness in view of his relationship to the plaintiffs. Under these circumstances, Collier was practically permitted to say that, in his opinion, on the particular occasion when Bevil was hurt, Peers had acted in an imprudent manner, and to make this statement without detailing the facts upon which his opinion was predicated so that the jury might judge of its reliability. But, even if it be conceded that the question propounded was not objectionable because it confined the witness' attention to Peers' conduct in a particular line of duty and during a single day, rather than to his general character for prudence or imprudence, still it is evident that no sufficient foundation was laid for permitting the witness to answer the question, even in the form in which it was propounded. Collier was not shown to have had a sufficient opportunity for observing Peers' actions while in charge of the car elevator to entitle him to pronounce judgment with reference to his general conduct in that line of service. Even if it should be conceded that the jury might infer from the fact that a coal car broke loose, rushed down the incline, and ran over Bevil, that it so broke loose through some culpable neglect of Peers, as to which proposition we express no opinion at this time, yet in the case at bar it was not sufficient to show that Peers was guilty of a single act of negligence that had resulted in the death of the deceased. It was necessary for the plaintiff to prove, or to produce testimony tending to prove, that Peers was an unfit person to be employed in the service in which he was engaged at the time of the accident, because of his careless or reckless habits, and that this fact was known to his employer, or that it ought to have been known. The only evidence offered tending to show that he was a careless man, and unfit to be so employed, was the opinion expressed by Collier, and that was incompetent for the reasons heretofore stated. Wherefore the judgment must be reversed, and the cause remanded, with directions to award a new trial.

It is so ordered.