MISSOURI, KANSAS & TEXAS R'Y CO. vs ELLIOTT.

Opinion Delivered June 8, 1899.

1. *Continuance—Stipulation for by one of Several Plaintiffs.*

Where there are a number of plaintiffs, a stipulation by one of them for a continuance, will not work a continuance of the cause to the inconvenience and annoyance of the others.

2. *Continuance—Motion for—Diligence.*

Where the motion for a continuance does not show that any diligence has been used to prepare for trial, does not state what evidence could be produced by a continuance, nor the names of the witnesses, and the case has been pending for over four years, the motion was properly denied.

3. *Jurors—Not Disqualified.*

It was not error to overrule challenges by the railroad company as to jurors who had previously had actions pending against the company, when they had none at the time, and testified on

their examination that their minds were free from bias or prejudice.

4. *Deposition of Witness Residing out of Territory—Objection To.*

The court properly overruled objection to the reading of depositions of witnesses who resided in Denison, Texas, without the District in which the case was tried, or an adjoining district, and more than 30 miles from the place of trial, although it was shown that the witnesses were in the Territory, and within the jurisdictiion of the court almost daily.

5. *Train Order—Secondary Evidence of.*

Where it is shown that train orders, about which witnesses are testifying have either been lost or destroyed, or are in possession of the railroad company, and it refuses to produce them, it is not error to permit the witnesses to testify as to their contents.

6. *Train Despatcher—Who is—Evidence.*

It was not error to permit the engineer running a train, and the chief train despatcher to testify that there was a train despatcher at a certain point, who he was, and what his duties were.

7. *Train Order—Evidence—Admissibility.*

It was not error to admit a train order which the witness, who was engineer of the train, testified was the order given him by the train despatcher.

8. *Written Instrument—Notice to Produce—Secondary Evidence.*

A notice to defendant to produce books and papers at time of trial is sufficient notice to permit the giving of secondary evidence.

9. *Wages of Fireman—Evidence of Competency.*

Testimony of a station agent, who possesses a schedule of the wages of the employees of a railroad, and of one who deceased has told the amount of wages he received, is competent to establish the wages of firemen in general.

10. *Record of Railway Company—When Secondary Evidence Admissible.*

Where the records of a railway company are without the juris-

diction of the Court and the company fails to produce them in response to a notice therefor, secondary evidence may be introduced to prove their contents.

11. *Habits and Customs of Deceased—Evidence.*

The testimony of the father-in-law of deceased is competent to show his habits, his customs in regard to providing for his family, and the amount of wages he received.

12. *Pleading—Denial of Incorporation—Insufficient.*

An answer denying that defendant is a "corporation duly created under the laws of the state of Missouri," without stating any further facts is a negative pregnant and does not require proof by plaintiff to sustain the allegation of incorporation.

13. *Fellow Servants—Train Despatcher and Fireman Not.*

A train despatcher and a fireman on a locomotive are not fellow servants so as to relieve a railroad company from liability for injuries sustained by a fireman through negligence of a despatcher.

14. *Fellow Servants—Telegraph Operator and Fireman Are.*

A telegraph operator who has no authority to direct the movements of a train is a fellow servant of a fireman on a locomotive.

15. *Death by Wrongful Act—Survivor of Action.*

A right of action for death by wrongful act survives in the widow and heirs.

Appeal from the United States Court for the Northern District.

WILLIAM M. SPRINGER, Judge.

Action by Georgia C. Elliott and others against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiffs. Defendant appeals. Affirmed.

This is an action brought by Lydia J. Elliott, the widow, and Georgia C. Elliott and Nannie F. Elliott, the

minor children, of William H. Elliott, deceased, to recover damages of the appellant for the alleged wrongful killing of the said William H. Elliott, who, at the time of his death, was employed as a fireman upon one of the engines operated upon the line of the appellant's railway between the town of Muskogee, in the Indian Territory, and Denison, in the state of Texas. The complaint was filed on the 9th day of April, 1893. Verdict was rendered in favor of the appellees on the 29th day of November, 1897, for the sum of $7,500. Motion for new trial was overruled, and appeal prayed, and allowed by this court.

The attorney for the appellant, in his "Specifications of Error," alleges that 101 errors were committed in the trial of this cause by the lower court. The first error alleged by appellant in his brief in this cause is as follows: "No. 1. The district court erred in refusing to grant a continuance of this case in accordance with the stipulation between appellee Lydia J. Elliott and appellant, and, after declining to grant continuance on stipulation, in further declining to either grant continuance or postponement of this case, to enable appellant to prepare for trial."

. *Clifford L. Jackson*, for appellant.

*William T. Hutchings* and *Preston C. West*, for appellees.

THOMAS, J. We have carefully examined this alleged stipulation, and also the motion for a continuance filed by the appellant, and the exhibits attached thereto, and it is our opinion that the appellant had no right to a continuance of this cause on either. This cause has been upon the docket for more than four years. The venue had been changed by the appellant from South McAlester, on the 1st day of February, 1894, and the record does not disclose that between that date and the month of November 1897 this

case had ever been reached for trial. There were other parties plaintiff in this case, the minor heirs, who were present in person and by their attorneys, pressing for trial, and we do not think that a stipulation signed by the attorney for the appellant and by only one of the appellees, the widow, should have worked a continuance, to the inconvenience and annoyance of the other appellees. The court also had a right to insist that this case, which had been on the docket for such a length of time, should be taken up and disposed of, and a stipulation of this kind certainly would not compel the court to continue the case to the detriment, perhaps, of other suitors. The motion for continuance did not state legal grounds for a continuance, and discloses that the appellant railway company for over five years had had an opportunity to investigate the case and circumstances surrounding the killing of Elliott. It further shows that the attorney for the minor appellees had written a letter to the attorney for the appellant a month before the day of the trial, offering to compromise the case, and also stating that if the proposition was not accepted, they would be ready for trial, and would press for a trial, when the case was called. There seems to have been no diligence used by the railway company to secure testimony which they infer in their motion for a continuance that they could procure, nor do they even intimate what witnesses they would have secured, or what their testimony would have been. And, even if there had been diligence on the part of the defendant railway company in this respect, the appellees would have had the right, under the statute (had the railway company given the names of its witnesses and what they expected to prove by each), to have admitted that such absent witnesses would, if present, have testified as claimed by the appellant in its motion for continuance, and the appellees would have then been entitled to an immediate trial. Section 5107, Mansf. Dig., provides that "the trial in each action shall be

*Continuance. Stipulation.*

in the order in which it stands upon the docket." And section 5108 provides that "a motion to postpone a trial on account of the absence of evidence shall, if required by the opposite party, be made only upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it; and, if it is for an absent witness, the affidavit must show what facts the affiant believes the witness will prove, and not merely the effect of such facts in evidence, and that the affiant himself believes them to be true. If, thereupon, the adverse party will admit that on the trial, the absent witness, if present, would testify to the statement contained in the application for a continuance, then the trial shall not be postponed for that cause: provided, that the opposite party may controvert the statement so set forth in the said motion for continuance by evidence."

"(2) The court erred in refusing to allow appellant's challenges to jurors Murphy, Bramstetter, and Whiteside." The record shows that the juror Murphy had had several claims against the Missouri, Kansas & Texas Railway Company; that some of them had never been settled; but, when asked by the court the question, "Are they still pending?" he answered, "They have been dropped." He stated that he had not had any claim against the railway company since the year 1889, except such as had been settled by the railway company, with one exception, and that was a small fire, which burned a few hundred rails for him, and that that had occurred in 1884 or 1885, and that he had never brought suit. He was further asked by the court the question: "Is there any reason why you cannot try this case now according to the law and the evidence, without any bias or prejudice whatever on account of your previous relations with the company?" Answer: "That would cut no figure in the case pending, nor in any other case." Question: "Your mind, then, is perfectly free from any bias or prejudice

against the company?" Answer: "Yes, sir." The juror Bramstetter testified that he did not have a claim of any kind against the Missouri, Kansas & Texas Railway Company; that he lost a son at Pryor Creek recently; that his son was killed by a car on a railway; that he never had any intention of instituting suit against the company for the killing of his son; and that he would try the case fairly and impartially, without prejudice or bias in any way. The juror Whiteside testified that he lived in the district; was a cattleman; that he did not have any claims at that time against the Missouri, Kansas & Texas Railway Company; that he had had; that all claims which the company did not pay he had dropped; that the last claim which he had had against the company was about a year and a half ago; and that he could try the case according to the law and the evidence, without any bias or prejudice as to the rights of the defendant. The appellant's attorney challenged the jurors Murphy and Whiteside because they had once had claims against the company, and the juror Bramstetter because his son had been killed by a railway car at Pryor Creek. As none of these jurors at that time had any claims against the defendant railway company pending or in course of suit, and as Murphy and Whiteside both testified that they had dropped any and all claims which they ever had, and the juror Bramstetter testified that he had never had any intention of bring-ing suit for his son, and all swore that their minds were free from bias or prejudice, and that they could try the case according to the law and the evidence, we think that the lower court did not err in overruling the appellant's challenges for cause. We are not willing to declare the law to be that all persons who have ever had claims against the railway company are forever thereafter disqualified from acting as jurors in any cause where the railway company may be a party.

*Juror. Not Disqualified.*

"(3) The district court erred in overruling appel-

lant's objection to the introduction of any evidence under
the complaint in this cause." This alleged error will be
fully considered upon the appellant's specification of alleged
error of the court in holding that the plaintiff's complaint
stated a cause of action, and in refusing to instruct the jury
to return a verdict for the appellant.

"(4) The district court erred in overruling appel-
lant's objection to the reading of the depositions of witnesses
Andrews, Thoman, and Smythe." The record discloses
that all three of these witnesses resided at the city of Deni-
son, in the state of Texas; that they were or had been in
the employ of the defendant railway company; that the wit-
ness Andrews was, at the time his deposition was taken, a
conductor for the Missouri, Kansas & Texas Railway Com-
pany; that the witness O. E. Thoman, at the time his depo-
sition was taken, was a locomotive engineer for the defend-
ant railway company; and that the witness John Smythe, at
the time his deposition was taken, was a fireman for the
defendant railway company. And the record further dis-
closes that the appellant was present, and cross-examined
these witnesses, at the time these depositions were taken:
The objection to the reading of these depositions was that
all three of these witnesses, although they resided in the
state of Texas, were frequently within the jurisdiction of
this court, as they were employed by the defendant railway
company upon its division running from Muskogee, Ind, T.,
to Denison, Tex. At the time these depositions were taken,
although the appellant was present and cross-examined the
witnesses, no objection was made to the taking of the depo-
sitions for the reasons now urged; nor was there any objec-
tion made by the appellant until this case was called for
trial and the jury sworn. Sections 2954-2956, Mansf. Dig.,
read as follows:

"Sec. 2954. Exceptions to depositions shall be in

writing, specifying the grounds of objection, filed with the papers of the case, and noted on the record.

"Sec. 2955. No exceptions, other than to the competency of the witness, or to the relevancy or competency of the testimony, shall be regarded, unless filed and noted on the record before the commencement of the trial.

"Sec. 2956. The court, on the motion of either party, shall decide upon the exceptions before the commencement of the trial."

The first and fourth paragraphs of section 2921 read as follows:

"Sec. 2921. They [meaning depositions] may be used on the trial of all issues in any action in the following cases: First. Where the witness does not reside in the county where the action is pending, or in an adjoining county, or is absent from the state, or in the military service of the United States, or of this state. Fourth. Where the witness resides thirty or more miles from the place where the court sits in which the action is pending, unless the witness is in attendance upon the court."

We are therefore of the opinion that the objection of the appellant to the reading of the depositions of these witnesses was properly overruled by the court, because the witnesses did not reside in the district or in an adjoining district, and resided more than 30 miles from Muskogee, where this action was pending; and we are also of the opinion that, even if this objection had been well taken, it was made too late by the appellant, the trial of the cause having commenced, and this objection not having been made as required by the statute.

Deposition.

"(5) The district court erred in admitting the evidence complained of in the specifications of error 8, 9, 10, 11, 12, 13, 14, 15, 16, 20, 21, 31, 32, 33, 35, 37, and 38." The

appellant objected to the witnesses named in the specifications of error as above, each testifying to the contents of certain writings. We think the court properly overruled these objections.

The witness J. F. Andrews testified that he was the conductor of the south-bound train which collided with the north-bound train; that he had received orders for the running of his train, which were issued from the train dispatcher's office, which was located at McAlester, Ind. T., at that time; that he received various orders at different stations between Muskogee and McAlester; that he received his last order at Eufaula station; that this order was in writing, and that he had torn it up or destroyed it. As this order had been destroyed, it certainly was not error for him to testify what the order was.

The witness O. E. Thoman produced the order about which he was testifying, identified it, it was made a part of his deposition, and it was clearly admissible; and as the record shows that all the testimony as to the contents of these writings was admitted either because the writings themselves had been destroyed or lost, or, being in the possession of the defendant railway company, it refused to produce them at the trial, as it had been notified to do by the attorneys for the appellees on the 24th day of September, 1897, we are of the opinion that the appellant's objections were properly overruled.

**Train Order. Secondary Evidence.**

As to the alleged errors urged by the appellant in its paragraph 6, on page 61 of its brief, that the court erred in admitting the testimony of the witnesses Thoman, Smythe, and Sullivan, stating that the man Barton was a train dispatcher, and in further stating what the duties of a train dispatcher were, we are of the opinion that the court properly admitted this testimony. All of those witnesses were in the employ of the defendant railway company. Two of

them were employed as engineers, running on this Choctaw division, and the witness Sullivan was the chief train dispatcher of the defendant railway company. We certainly think that the chief train dispatcher of the defendant railway company would be presumed to know that the defendant railway company had a train dispatcher's office at McAlester at the date of this collision, and that Barton was the train dispatcher at that point; and that the other two witnesses, who were engineers, and received orders from this train dispatcher at McAlester, would certainly be presumed to know that Barton was the train dispatcher of the defendant railway company at McAlester, and that the defendant railway company maintained a dispatcher's office at that point. The court properly refused to charge the jury, as requested by the appellant, that they could not find that this man Barton was a train dispatcher from the mere fact that these witnesses called him so. All of the testimony on this point was that Barton was a train dispatcher as distinguished from an ordinary telegraph operator, and there was no testimony in this case that would have justified the jury in finding that Barton was only an ordinary telegraph operator, and therefore a fellow servant of the deceased, and for that reason that the jury should return a verdict for the defendant. We think that, if there was any one witness who could have been produced by the appellees in this case to have testified as to whether or not the defendant railway company maintained a train dispatcher's office at McAlester at the time of this collision and to testify as to who that train dispatcher was, the chief train dispatcher of the appellant railway company, at that time was the one witness who was, of all others, competent to testify as to these facts.

*Train Dispatcher. Who is? Evidence.*

As to the errors alleged and urged by the appellant in paragraph 7, on page 62 of its brief, the court properly

(27)

admitted the order attached to the deposition of Thoman,
because he swore that it was the order issued to him by the

Train Order.
Admissibility

train dispatcher, was identified by him, and made a part of
his deposition. The court properly admitted the testimony
of the witness Smythe as to the contents of the train order
which was delivered to him, because the proof showed that
this order had been destroyed or misplaced, and could not
be produced. The testimony of the witness Andrews, as to
the contents of the order which was delivered to him by the
train dispatcher, was properly admitted, because the witness
Andrews testified that the original order had been torn up
or destroyed by him. It appears from the testimony in this
case that the train dispatcher at McAlester delivered to the
engineer of the north-bound train a copy of this order, and
also delivered to the conductor of that train a copy of the
order, and retained a copy himself. We do not think that it
was incumbent upon the appellees to have produced the copy
retained by the train dispatcher, and which most probably
was in the possession of the defendant railway company.
The contention of the appellant that the notice given by the
appellees, to-wit, to produce books and papers at the time
of the trial, was not such a notice as would permit the
appellees to offer secondary evidence as to the contents of
the writings referred to in the testimony, in our opinion is
not tenable. If the contention of the appellant was correct,
it would be in its power to withold or destroy writings of this
character; and as, under the section referred to by the ap-
pellant, the only remedy which the appellees would have
would be to strike out the defendant's answer, this would

Written In-
trument.
Notice to pro-
duce.

clearly work a great injustice, and would prevent the proof
of negligence of this character, if the appellees were com-
pelled to prove the contents by the writings themselves.
We think that this notice to produce these writings and
records, which were in the possession of the defendant rail-
way company, was sufficient to permit the appellees to

prove the contents of these writings by secondary evidence.

As to the eighth assignment of error urged on page 65 of appellant's brief, "that the court erred in admitting the testimony of the witnesses Powers, Morton, and Broyles as to the compensation and salary of firemen in general, and as to the deceased," we are of the opinion that this testimony was properly admitted. Morton was the station agent of the defendant railway company at Muskogee, and Powers was a fireman in the employ of the defendant. Morton testified that he had in his possession a schedule showing the amount paid firemen, and we think that both of these witnesses were competent to testify as to the amount received by firemen on defendant's line of railway, and the testimony of the witness Broyles, who stated that the deceased told him the amount received by him, we believe was competent testimony.

Wages of Deceased. Evidence.

As to the error alleged in specification No. 9, on page 71 of appellant's brief, that "the court erred in permitting the witness Sullivan to testify as to the contents of certain records in the train master's office," we think the testimony was competent. The testimony shows that all of these records were kept in the state of Texas, outside of the jurisdiction of this court. It would be an impossibility to have them produced by a supœna duces tecum, and the contents of those records could be proved—First, by the production of the records themselves; second, when the writing is in the hands or power of the adverse party, as in this case, the notice served upon the adverse party to produce the writing at the trial is sufficient to lay the foundation for the introduction of secondary evidence as to the contents of the document or record. See 2 Greenl. Ev. (13th Ed.) § 560. It appears from the record in this case that this notice was served upon the defendant railway company, that they failed to produce the records called for, and therefore the

appellees had the right to prove their contents by secondary evidence. The statute of the United States referred to by appellant (section 724, Rev. St. U. S.), and the statute of Arkansas, also referred to by counsel for appellant, do not apply. These statutes simply provide the manner in which the courts may compel the production of books and papers by a party to a suit, and the penalty to be imposed for a failure to comply with the court's order. The appellees might have proceeded under the statute of Arkansas, and, in that event, a failure on the part of the railway company to produce the books and papers called for would have been punished by striking its answer and defense from the files; but the notice served upon the defendant railway company was sufficient to lay the foundation for the introduction of secondary evidence.

*Record of Railway Co. Secondary Evidence of.*

The alleged error complained of in paragraph 10, on page 73 of appellant's brief, in our opinion, is without merit. The witness Broyles was the father-in-law of the deceased; was acquainted with him, and had been for a number of years, and certainly was qualified to testify as to his habits and custom with reference to providing for his family; and we think that his testimony with reference to the wages received by the deceased as railway fireman was admissible. It is probable that no witness, except an official of the railway company, who kept the account of the deceased as fireman, or the paymaster, who paid him monthly, could have testified exactly as to the amount of wages received by the deceased. While the appellant infers that it could have proved that Elliott was in his private life a profligate man, it did not attempt to give the name of any witness by which this proof could be made, and we are of the opinion that, if the deceased had been the character of man claimed by counsel for the appellant, he would not have been in the employ of defendant railway company as a fireman.

*Habits and Custom of Deceased. Evidence.*

There are three other questions raised by the appellant's brief which we deem necessary to consider. The first is that the plaintiffs allege in their complaint that the defendant was a private corporation, "duly incorporated under the laws of the state of Missouri.'' The defendant's answer upon that proposition is as follows: "Defendant denies that it is a private corporation, duly incorporated under the laws of the state of Missouri." Appellant claims that the court should have directed the jury to return a verdict for it, because the plaintiff failed to prove the allegation as charged. This contention is not well taken. It was the duty of the appellant, if it had intended to deny that it was a corporation, or that it was a Missouri corporation, or that, if it had been a corporation, the corporation had been dissolved, or if it intended to plead misnomer, to have also stated the facts. In the case of Express Co. vs Haggard, 37 Ill. 465, the defendant was sued as a corporation, which was in fact a limited partnership, and the denial in its answer was as follows: "It denies that the defendant is, or ever was, a corporation organized and existing under the laws of England." The court held that this was a negative pregnant,—pregnant with the admission that the defendant was a corporation,—and that it consequently raised no issue. The plea of the defendant admitted that it was a corporation, and, by answering the pleading as such, it waived this objection. See 6 Thomp. Corp. §§ 7677, 7678.

Pleading. Denial of Incorporation.

The second question to be considered is a proposition contended for by counsel for appellant that the train dispatcher Barton was a fellow servant of the deceased, and therefore that the appellees could not recover for that reason, and that the court below should have directed a verdict for the appellant. The case of Railroad Co. vs Barry, 58 Ark. 198, 23 S. W. 1097, was a case very similar to the one at bar. In that case a fireman was injured in a railway collision, and

sued the railroad company, claiming that his injury was caused by the negligence of the train dispatcher in ordering the movement of trains. The question as to whether or not the train dispatcher was a fellow servant of the fireman was directly passed upon. The court in that case refused to instruct the jury that the train dispatcher was a fellow servant of the fireman; and the court in that case also held that the negligence of the train dispatcher was the negligence of the company, and that the plaintiff was entitled to recover for the damage, citing Railway Co. vs Ross, 112 U. S. 377, 5 Sup. Ct. 184; referring to which case we find that Justice Field, speaking for the court, quotes many English and other authories to the effect that employes engaged by the same corporation or employer in carrying on the usual business of the corporation or employer were fellow servants, notwithstanding the fact of their being engaged in the performance of different duties and work in different departments of the same business, and that one employe could not recover damages from the corporation or employer growing out of the negligence of his fellow servant. He then proceeds to show that this cannot be regarded as a general rule applicable alike to each case arising from the negligence of a co-laborer or employe, and cites the case of Coal Co. vs Reid, 3 Macq. 266, and Same vs McGuire, Id. 300, decided in 1858, in which some of the exceptions to the rule are stated. Lord Chancellor Chelmsford, who gave the principal opinion in the latter case, referring to previous cases in which the master's exemption from liability had been sustained, said: "In the consideration of these cases, it did not become necessary to define with any great precision what was meant by the words 'common service' or 'common employment,' and perhaps it might be difficult beforehand to suggest any exact definition of them. It is necessary, however, in each particular case, to ascertain whether the servants are fellow laborers in the same work, because,

although a servant may be taken to have engaged to encounter all risks which are incident to the service which he undertakes, yet he cannot be expected to anticipate those which may happen to him on occasions foreign to his employment. Where servants, therefore, are engaged in different departments of duty, an injury committed by one servant upon another by carelessness of his peculiar work is not within the exemption, and the master's liability attaches in that case in the same manner as if the injured servant stood in no such relation to him." The lord chancellor also commented upon some decisions of the Scotch courts, among others that of McNaughton vs Railway Co., 19 Sess. Cas. Scot. (2d Series) 271, and said that it might be "sustained without conflicting with the English authorities, on the ground that the workmen in that case were engaged in totally different departments of work; the deceased being a joiner or carpenter, who, at the time of the accident, was engaged in repairing a railway carriage, and the persons by whose negligence his death was occasioned were the engine driver and the persons who arranged the switches." And in the same case Lord Brougham, after mentioning the observations of the judge of the Scottish courts that an absolute and inflexible rule releasing the master from responsibility in every case where one servant is injured by the fault of another was utterly unknown to the law of Scotland, said that it was also utterly unknown to the law of England, and added: "To bring the case within the exemption, there must be this most material qualification: that the two servants must be men in the same common employment, and engaged in the same common work, under that common employment." Later decisions in the English courts extend the master's exemption from liability to cases where the servant injured is working under the direction of a foreman or superintendent, the grade of service of the latter not being deemed to change the relation of the two as fellow

servants.   Thus, in Wilson vs Merry, decided in the house
of lords in 1868, on appeal from the court of sessions of
Scotland, the submanager of a coal pit, whose negligence in
erecting a scaffold which obstructed the circulation of
air underneath, and led to an accumulation of fire damp,
which exploded and injured a workman in the mine,
was held to be a fellow servant with the injured party.
And the court laid down the rule that the master was not
liable to his servant unless there was negligence on the
master's part in that which he had contracted with the ser-
vant to do, and that the master, if not personally superin-
tending the work, was only bound to select proper and
competent persons to do so, and furnish them with adequate
materials and resources for the work; that when he had
done this he had done all that he was required to do; and, if
the persons thus selected were guilty of negligence, it was
not his negligence, and he was not responsible for the con-
sequences.   L. R. 1 H. L. Sc. 326.   In this case, as in many
others in the English courts, the foreman, manager, or sup-
erintendent of the work by whose negligence the injury was
committed was himself also a workman with the other
laborers, although exercising a direction over the work.
The reasoning of that case has been applied so as to include,
as contended here, employes of a corporation in departments
separated from each other; and it must be admitted that the
terms "common employment," under late decisions in Eng-
land, and the decisions in this country following the Massa-
chusetts case, are of very comprehensive import.   It is
difficult to limit them so as to say that any persons employed
by a railway company, whose labors may facilitate the run-
ning of its trains, are not fellow servants, however widely
separated may be their labors.   See Holden vs Railroad Co ,
129 Mass. 268.   But, notwithstanding the number and
weight of such decisions, there are, in this country, many
adjudications of courts of great learning restricting the ex-

emption to cases where the fellow servants are engaged in the same department, and act under the same immediate direction, and holding that, within the reason and principle of the doctrine, only such servants can be considered as engaged in the same common employment. It is not, however, essential to the decision of the present controversy to lay down a rule which will determine, in all cases, what is to be deemed such an employment, even if it were possible to do so. There is, in our judgment, a clear distinction to be made, in their relation to their common principal, between servants of a corporation, exercising no supervision over others engaged with them in the same employment, and agents of the corporation, clothed with the control and management of a distinct department, in which their duty is entirely that of direction and superintendence. A conductor, having the entire control and management of a railway train, occupies a very different position from the brakeman, the porters, and other subordinates employed. He is in fact, and should be treated as, the personal representative of the corporation, for whose negligence it is responsible to subordinate servants. This view of his relation to the corporation seems to us a reasonable and a just one, and it will insure more care in the selection of such agents, and thus give greater security to the servants engaged under him, in an employment requiring the utmost vigilance on their part, and prompt and unhesitating obedience to his orders. The rule which applies to such agents of one railway corporation must apply to all, and many corporations operate every day several trains over hundreds of miles, at great distances apart, each being under the control and direction of a con ductor especially appointed for its managements. We know, from the manner in which railroads are operated, that, subject to the general rules and orders of the directors of the companies, the conductor has entire control and management of the train to which he is assigned. He directs

when it shall start, at what speed it shall run, at what
stations it shall stop, and for what length of time, and every-
thing essential to its successful movements, and all persons
employed on it are subject to his orders.   In no proper
sense of the terms is he a fellow servant with the fireman,
the brakeman, the porters, and the engineer.   The latter
are fellow servants in the running of the train under his
direction, who, as to them and the train, stands in the place
of and represents the corporation.   As observed by Mr.
Wharton in his valuable treatise on the Law of Negligence:
"It has sometimes been said that a corporation is obliged to
act always by servants, and that it is unjust to impute to it
personal negligence in cases where it is impossible for it to
be negligent personally.   But, if this be true, it would re-
lieve corporations from all liability to servants.   The true
view is that, as corporations can act only through superin-
tending officers, the negligence of those officers, with
respect to other servants, are the negligences of the corpor-
ation."   Section 232a.   The author, in a note, refers to
Brickner vs Railroad Co., decided in the supreme court of
New York, and afterwards affirmed in the circuit court of
appeals, and to Malone vs Hathaway, decided in the latter
court, in which opinions are expressed in conformity with
his views.   These opinions are not, it is true, authoritative,
for they do not cover the precise points in judgment, but
were rather expressed to distinguish the questions thus
arising from those then before the court.   They indicate,
however, the disposition to engraft a limitation upon the
general doctrine as to the master's exemption from liability
to a servant for the negligence of their fellows, when a cor-
poration is the principal and acts through superintending
agents.   Thus, in the first case, the court said:   "A cor-
poration cannot act personally.   It requires some person to
superintend structures, to purchase and control the run-
ning of cars, to employ and discharge men, and provide

all needful appliances. This can only be done by agents.
When the directors themselves personally act as
such agents, they are the representatives of the cor-
poration. They are then the executive head or master.
Their acts are the acts of the corporation. The duties
above described are the duties of the corporation. When
these directors appoint some person other than themselves
to superintend and perform all these executive duties for
them, then such appointee, equally with themselves, repre-
sents the corporation as master in all those respects. And
though, in the performance of these executive duties, he
may be and is a servant of the corporation, he is not in
those respects a 'co-servant,' a 'co-laborer,' a 'co-employe,'
in the common acceptance of those terms, any more than is
a director who exercises the same authority." 2 Lans. 516,
affirmed in 49 N. Y. 672. And in Malone vs Hathaway, in the
court of appeals, Judge Allen says: "Corporations neces-
sarily acting by and through agents, those having the super-
intendence of various departments, with delegated authority
to employ and discharge laborers and employes, provide
materials and machinery for the service of the corporation,
and generally direct and control, under powers and instruc-
tions from the directors, may well be regarged as the repre-
sentatives of the corporation, charged with the performance
of its duties, exercising the discretion ordinarily exercised
by principals. and, within the limits of delegated authority,
the acting principal. These acts are in such case the acts
of the corporation, for which and for whose neglect the cor-
poration, within adjudged cases, must respond, as well to
the other servants of the company as to strangers. They are
treated as the general agents of the corporation in the sev-
eral departments committed to their care. 64 N. Y. 5-12.
See, also, Corcoran vs Holbrook, 59 N. Y. 517. In Railroad
Co. vs Stevens, the supreme court of Ohio held that where
a railroad company placed the engineer in its employ under

the control of a conductor of its train, who directed when the cars were to start and when to stop, it was liable for an injury received by him caused by the negligence of the conductor. 20 Ohio, 415. There a collision between two trains occurred in consequence of the omission of the conductor to inform the engineer of a change of places in the passing of trains ordered by the company. Exemption from liability was claimed, on the ground that the engineer and conductor were fellow servants, and that the engineer had in consequence taken, by his contract of service, the risk of the negligence of the conductor, and also that public policy forbade a recovery in such cases. But the court rejected both positions. To the latter it very pertinently observed that it was only when the servant had himself been careful that any right of action would accrue to him, and that it was not likely that any would be careless of their lives and persons or property merely because they might have a right to recover for injuries received. "If men are influenced," said the court, "by such remote considerations, to be careless of what they are likely to be most careful about, it has never come under our observation. We think the policy is clearly on the other side. It is a matter of universal observation that, in any extensive business where many persons are employed, the care and prudence of the employer is the surest guaranty against mismanagement of any kind." In Railroad Co. vs Keary, 3 Ohio St. 201, the same court affirmed the doctrine just announced, and decided that when a brakeman in the employ of a railroad company, on a train under the control of a conductor having exclusive command, was injured by the carelessness of the conductor, the company was responsible; holding that the conductor in such case was the sole and immediate representative of the company, upon which rested the obligation to manage the train with skill and care. In the course of an elaborate opinion, the court said that, from the very nature of the contract

of service between the company and the employes, the company was under obligation to them to superintend and control with skill and care the dangerous force employed, upon which their safety so essentially depended. "For this purpose," said the court, "the conductor is employed, and in this he directly represents the company. They contract for and engage his care and skill. They commission him to exercise that dominion over the operations of the train which essentially pertains to the prerogatives of the owner, and in its exercise he stands in the place of the owner, and in the discharge of a duty which the owner, as a man and a party to the contract of service, owes to those placed under him, and whose lives may depend on his fidelity. His will alone controls everything, and it is the will of the owner that his intelligence alone should be trusted for this purpose. This service is not common to him and the hands placed under him. They have nothing to do with it. His duties and their duties are entirely separate and distinct, although both are necessary to produce the result. It is his to command, and theirs to obey and execute. No service is common that does not admit a common participation, and no servants are fellow servants when one is placed in control over the other." In Railroad Co. vs. Collins, 2 Duv. 114, the subject was elaborately considered by the court of appeals of Kentucky. And it held that in all those operations which require care, vigilance and skill, and which are performed through the instrumentality of superintending agents, the invisible corporation, though never actually, is yet always constructively, present through its agents who represent it, and whose acts, within their representative spheres, are its acts; that the rule of the English courts, that the company is not responsible to one of its servants for an injury inflicted from the neglect of a fellow servant, was not adopted to its full extent in that state, and was regarded there as anomalous, inconsistent with principle

and public policy, and unsupported by any good and consistent reason. In commenting upon this decision, in his treatise on the Law of Railways, Redfield speaks with emphatic approval of the declaration that the corporation is to be regarded as constructively present in all acts performed by its general agents within the scope of their authority. "The consequences of mistake or misapprehension upon this point," says the author, "have led many courts into conclusions greatly at variance with the common instincts of reason and humanity, and have tended to interpose an unwarrantable shield between the conduct of railway employes and the just responsibility of the company. We trust that the reasonableness and justice of this construction will at no distant day induce its universal adoption." 1 Redf. R. R. 554. There are decisions in the courts of other states, more or less in conformity with those cited from Ohio and Kentucky, rejecting or limiting, to a greater or less extent, the master's exemption from liability to a servant, for the negligent conduct of his fellows. We agree with them in holding, and the present case requires no further decision, that the conductor of a railway train, who commands its movements, directs when it shall start, at what stations it shall stop, at what speed it shall run, and has the general management of it, and controls over the persons employed upon it, represents the company, and therefor that for injuries resulting from his negligent acts the company is responsible. If such a conductor does not represent the company, then the train is operated without any representative of its owner.

If, now, we apply these rules of the relation of a train dispatcher of railway trains to the company and to the subordinates on the trains under his direction, the objections urged to the rulings of the court below will be readily disposed of. The purport of the court's rulings touching the liability of the company is that the train dispatcher and fire-

man, though both employes, were not "fellow servants," in the sense in which that term is used in the decisions; that the former was the representative of the company, standing in its place and stead in the running of its trains, and that the latter was, in that particular, his subordinate; and that for the former's negligence, by which the latter was injured, the company was responsible.

*Fellow Servants. Train Dispatcher and Fireman not.*

It was not disputed on the trial below that the collision which caused the death of the fireman was the result of the negligence of the train dispatcher, and hence was attributable to the negligence of the appellant company.   See Sheehan vs Railroad Co., 91 N. W. 332;  Smith vs Railway Co., 92 Mo. 359, 4 S. W. 129;  Darrigan vs Railroad Co., 52 Conn. 285;  Railroad Co. vs. McLannan, 84 Ill. 109;  Railroad Co. vs McKenzie, 81 Va. 71;  Cooley, Torts, 564.   In the case of Railroad Co. vs Camp, 13 C. C. A. 233, 65 Fed. 952, this question was involved and directly passed upon.   The court, in substance, held as follows:  A train dispatcher, who has complete control of all trains on a division of a railroad, is not a fellow servant of an engineer of a train running on such division, either at common law or under the statute of Ohio.   Judge Taft delivered the opinion of the court in that case, and the conclusion was that a person who was merely a telegraph operator, and who has no authority to direct the movement of trains, is a fellow servant of a fireman or engineer; but that a train dispatcher, who has the power and authority, acting in the name of the superintendent, to direct the movement of trains, would not be a fellow servant, and the railroad company would be liable for his negligence.

*Fellow Servants. Telegraph Operator and Fireman are.*

The third and last question raised by the appellant in its brief is that the right of survivorship of actions by the widow and heirs against one who wrongfully killed the husband and father does not exist in the Indian Territory,

and that for that reason the court should have directed a verdict for the railroad company. As this question has been directly passed upon by the United States circuit court of appeals for the Eighth circuit in the case of Coal Co. vs Bevil, 10 C. C. A. 41, 61 Fed. 757, which court holds that the right of action does survive in the widow and heirs, this court is bound by the decision of the circuit court of appeals. No errors appearing in the record in this case, the judgment of the lower court is affirmed.

*Survivor of Action.*

CLAYTON and TOWNSEND, JJ., concur.