BROWN ET AL VS MCNAIR.

Opinion delivered October 19, 1904.

1. *Jurors—Qualifications of—Relation of Attorney and Client.*

A juror is not disqualified because he had some time previously been a client of one of the attorneys in the case, where it is not shown that bias existed against one of the parties by reason of such former relation.

2. *Conversion—Pleading—Evidence Admissible Thereunder.*

In an action for conversion of certain corn, the issue was as to the ownership of the corn and this depended upon the ownership of the land. Plaintiff's complaint contained averments of ownership, and under such averments it was proper to introduce in evidence the Cherokee laws relating to the ownership of the property, without specially pleading them.

3. *Verdict—Not Disturbed When Based on Conflicting Evidence.*

In an action for conversion, the evidence was conflicting upon several essential matters at issue and it was therefore proper for the court to refuse to disturb the verdict of the jury, there being sufficient evidence to sustain their verdict, and the reconcilement of conflicting testimony being solely within their province.

4. *Instructions—No Error in Refusing Where Jury finds Against Facts on Which it is Based.*

Where an instruction requested by defendant was based upon the existence of certain facts, and the jury found against the existence of such facts no error was committed by refusing to give the instruction.

Appeal from the United States Court for the Northern District.

JOSEPH A. GILL, Judge.

Action by Carrie McNair against Samuel Brown and another. Judgment for Plaintiff. Defendants appeal. Affirmed.

On the 5th day of November, 1902, plaintiff (appellee here) filed her complaint at law against appellant Sam Brown (defendant below), in which she alleged that she and said defendant were residents of Indian Territory; that on or about the 22d day of October, 1902, she was the owner and in possession of 750 bushels of corn then on her farm on Verdigris river; that on

that date defendant Sam Brown entered plaintiff's premises, and took possession of said corn and hauled it away, without her knowledge or consent, and converted it to his own use and benefit; and that the value of the corn was $225, for which she prays judgment. On November 24, 1902, defendant Brown filed his answer and disclaimer. He denies that plaintiff is a resident of Indian Territory; denies that she was the owner and in possession of any corn at any place in the Indian Territory; denies that he unlawfully took possession of said corn and converted it to his own use; but alleges that he took possession of about 364 bushels of corn for the use and benefit of his mother, Mary J. Thompson, who is a Cherokee citizen. He states that he has no interest whatever in said corn, and only acted as agent for his mother. He asks that his mother be substituted in his place to defend this action. On same day said Mary J. Thompson applied to the court to be made a party defendant by substitution, which was granted, and on same day she filed her answer. She alleges that she is a citizen of the Cherokee Nation, and resides therein; denies that the plaintiff is a citizen or resident of the Indian Territory; denies that plaintiff was the owner or in possession of the corn in controversy; denies that defendant Sam Brown unlawfully took said corn and converted it to his own use. She alleges that she was the owner of the farm upon which the corn was grown, and of the corn itself, which was grown by her tenant; alleges that plaintiff was her daughter-in-law, having married her son in 1895, and that shortly after the marriage she deserted her husband and went to Indiana, where she has since resided; that in August, 1895, her son was drowned in the Verdigris river; that at the time of his death he owned a couple of horses and a binder, which was all the property he had; that he was an invalid, and had never made any improvements upon the public domain of the Cherokee Nation; that there was no administration of his estate, but that she paid all his debts and funeral expenses; and that she never received any of his property,

except a blind mare.   She further alleges that on May 18, 1898, plaintiff, through her attorneys, gave this defendant a bill of sale to the crops on the farm plaintiff now claims as her own, in consideration of having paid said debts; that on same day she relinquished to the defendant certain premises which she claimed through her husband, for the premises on which the corn was grown.   Defendant alleges that said relinquishment was without consideration, and was obtained by fraud; that she immediately published a notice in a newspaper warning all persons against purchasing said premises; and that she had never renounced her claim to said premises.   She asks to be substituted to defend this action.   Trial was had on the 20th day of March, 1903, and on March 23, 1903, the jury returned the following verdict:   "We, the jury duly impaneled in above action, find the issues therein joined in favor of the plaintiff and against the defendants, Sam Brown and Mary J. Thompson, and assess the damage of the plaintiff in the sum of $105."   On March 24, 1903, defendants filed a motion for new trial, which was by the court overruled, and prayed an appeal to this court.

*Geo. E. McCulloch*, for appellants.

*Dooley & Keith* and *E. B. Lawson*, for appellee.

TOWNSEND, J.   Appellants have filed herein five assignments of error.   Of these, the first and second may be considered together.   They are as follows:

"(1)   The court erred in overruling defendant's challenge for cause to the jurors Duke and Adams.   (2)   The court erred in overruling the defendant's challenge to the juror McCaleb."  Appellants contend that the court erred in overruling defendant's challenge for cause to these jurors because the relation of attorney and client had existed between them and one of the

attorneys for appellee.    The record clearly shows, however, that
the relation had terminated "three or four months ago" in the
cases of the jurors Duke and Adams, and in the case of McCaleb
"a year or more."    In the absence of any showing that the jurors
were unduly biased by their former relation to one of the attor-
neys in the case, to the prejudice of the parties litigant—and no
such state of affairs is disclosed by the record—the court below
properly held that these men were qualified to serve as jurors.
This court has held in the case of M., K. & T. Ry. Co. vs Elliott,
2 Ind. Ter. 407, 51 S. W. 1067, that, notwithstanding the fact
that some of the jurors had had cases against the defendant
railway, they were not disqualified for that reason, providing
that at the time of the trial of the case their minds were free from
prejudice and bias.    We see no reason for departing in this
instance from the rule there laid down.

Appellants' third assignment of error is as follows:
"(3)    The court erred in allowing the plaintiff to read in evidence
to the jury the Cherokee law, to support the allegations of her
complaint, to which reading and ruling of the court defendant
excepted."    Upon this point appellants contend that:    "If the
plaintiff wanted to rest her title to the corn sued for upon any
Cherokee law, it should have been specially pleaded.    United
States Courts in the Indian Territory do not take judicial notice
of the local laws of the various tribes of Indians in the Indian
Territory.    Such laws are placed on the footing of local laws and
customs, and must be pleaded and proven.    See Wilson vs
Owens, 86 Fed. 571, 30 C. C. A. 257.    The courts do not take
judicial notice of the laws of the Indian tribes in the Indian
Territory, but they must be pleaded and proven before effect can
be given to their provisions in a judicial proceeding.    See
Hockett vs Alston, 110 Fed. 910, 49 C. C. A. 180."    But says
appellee:    "It is true that the United States Courts in the
Indian Territory do not take judicial notice of the local laws of

the various tribes of Indians in the Indian Territory, and we are
not now asking that this court take judicial knowledge of the
Cherokee laws introduced in evidence by plaintiff.   The portions
of the Cherokee law read to the jury by counsel for plaintiff were
offered as evidence, and were proven, and are now matters of
record; and we cannot see why counsel for appellant insists that
we desire this court to take judicial knowledge of the Cherokee
laws introduced, for they are a matter of record in this case."
The Cherokee laws referred to are article 4, § 518 (descent of
property), and article 14, §§ 241, 244 (possession of property),
introduced by counsel for appellee; section 667 (on abandoment),
and sections 761 and 762 (as to possession of improvements),
introduced by counsel for appellants.   If these laws were in-
troduced merely as evidence to sustain the allegations of the
pleadings, and as showing title to the lands on which the corn in
controversy grew, it must be held to be proper evidence.   The
ownership of the crop in this case depended upon the ownership
of the land on which it grew.   This is a suit for conversion of
corn, and all that was necessary for the plaintiff to allege in her
complaint, to maintain the action, was that she was the owner of
the corn, and that defendants wrongfully converted the same to
their own use and benefit, to the damage of plaintiff.   An ex-
amination of the record discloses the fact that plaintiff's com-
plaint contained these averments, and defendant's counsel must
have deemed that the complaint was sufficient, as no objection
was made to it.   In Malcolm vs O'Reilly, 46 N. Y. Super. Ct.
222, the court held that it was unnecessary to state in a complaint
for conversion in what manner the plaintiff became the owner of
the property converted, because it is a matter of evidence.   In
Warren vs Dwyer, 91 Mich. 414, 51 N. W. 1062, it was held that
the complaint in a suit for conversion need not show the nature
or evidence of the plaintiff's title.   The universal rule of plead-
ing applicable to conversion will be found in the text of 26 Am.
& Eng. Law, 801, as follows:  "The material averments in an

action of trover are ownership or possession of the property in the plaintiff, and its wrongful taking or conversion by the defendant. But the declaration need not show the nature or evidence of the plaintiff's title."

Appellants' fourth assignment of error is as follows: "(4) The court erred in overruling defendants' motion at the close of plaintiff's testimony to peremptorily instruct the jury to find for the defendant, for these reasons: (a) Plaintiff had not proved title in herself to said farm as a Cherokee citizen by adoption. (b) The Cherokee law by virtue of which she claimed had not been specially pleaded." The second point in this assignment of error has already been discussed, and it will not be necessary to notice it further. Appellee was a white woman who had married a Cherokee citizen. She claims title to the farm upon which grew the corn in controversy in two ways—through her husband, and also by relinquishment from Mrs. Thompson. It is contended by appellants, and rightly, that in this case it is necessary to show title to the farm upon which the corn grew, in order to establish appellee's case, and, to do this, she would have to show her rights as an adopted citizen of the Cherokee Nation. There is nowhere any attempt to show that her marriage was not valid, and that she thereby became entitled to the rights of an intermarried citizen of that nation. There is, however, an attempt to show that she abandoned her husband, and thus forfeited those rights. Appellee and her husband were married in Ft. Wayne, Ind., in January, 1895. They immediately went to Indian Territory to live, and lived together until April of that year, when she returned to Ft. Wayne on a visit, as she testifies, as she was in poor health. According to Mrs. Thompson's statements, appellee claimed he (appellee's husband) did not have anything, and she was going back to her people, and she went, and that her husband tried to get her to stay. Appellee testifies, however, that she went with her husband's knowledge

and consent; that he went with her to Nowata and Coffeyville, on her way to Ft. Wayne (and this is corroborated by other witnesses); that she and her husband corresponded regularly up to the time of his death, which occurred in August of that year; and that she had no intention of abandoning her husband. The continuance of the marriage relation, when once it has been entered into, is always and everywhere to be presumed, in the absence of clear and decisive proof to the contrary, and in this case we do not believe the evidence is sufficient to show abandonment on the part of appellee. Upon the question as to whether the title to the farm upon which the corn grew was vested in appellee's husband, there is a conflict of evidence. There is however, sufficient evidence to sustain the verdict of the jury. The reconcilement of conflicting testimony is within the province of the jury; and where no fraud or irregularity appears, and there is sufficient evidence to sustain the verdict, it will not be disturbed. Appellee also claims title by relinquishment from Mrs. Thompson, who, on her part, says that the relinquishment was obtained by deceit and misrepresentation. This also was left to the jury to determine as a question of fact, under the instructions of the court below. They are the sole judges of the weight of the testimony and of the credibility of the witnesses. They have an opportunity of judging for themselves as to the demeanor of the witnesses upon the stand, and the weight to be attached to the testimony, and their findings will not be disturbed on slight provocation.

Appellants' fifth assignment of error is as follows: "(5). The court erred in refusing to give to the jury instruction No. 1 for defendant, on abandonment." The instruction requested is as follows: "No. 1. The jury is instructed by the court that if they believe from the evidence in this case that the plaintiff, Carrie McNair, while living with her husband, R. L. McNair, in the Cherokee Nation, Indian Territory, abandoned him, then the

plaintiff cannot recover in this case, and the jury must find for the defendants." The question of abandonment has been previously discussed ,and this court, being of the opinion that the evidence is not sufficient to show abandonment by appellee of her husband, are further of the opinion that there was no error in refusing said instruction.

There being no error in the record, we are of the opinion that the judgment of the court below should be, and it is, affirmed.

RAYMOND, C. J., and CLAYTON, J., concur.